Filed 10/28/15  P. v. Hayes CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>RANDY HAYES et al.,<br><br>    Defendants and Appellants. | F067970<br><br>(Super. Ct. Nos. MF010353A & MF010353B)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Thomas S. Clark, Judge.

Marilyn G. Burkhardt, under appointment by the Court of Appeal, for Defendant and Appellant Randy Hayes.

James Bisnow, under appointment by the Court of Appeal, for Defendant and Appellant Albert Brown.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine Chatman and Jeffrey Grant, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Defendants Randy Hayes and Albert Brown were two of the three perpetrators of a home invasion robbery in Mojave. They were tried together and each was found guilty of two counts of residential robbery and one count of making a criminal threat. They argue now that the criminal threat counts were not supported by sufficient evidence; those counts should have been dismissed upon defendants' motion during trial; and (in Brown's case) the sentence for the criminal threat conviction should have been stayed pursuant to Penal Code section 654.

We agree with defendants that the evidence was insufficient to support the criminal threat convictions. A victim was told to shut up or he would be shot, but no witness could say which of the three perpetrators uttered this threat. There was simply no evidence at all on the basis of which the jury could rationally find that Hayes or Brown made the threat. There also was no evidence that either defendant aided and abetted the making of the threat. We will reverse those convictions. This result makes it unnecessary to address defendants' remaining arguments about the criminal threat counts.

Defendants also request that we examine the confidential record of a *Pitchess*[1] hearing to determine whether the trial court abused its discretion in finding that the officer personnel records disclosed to the court contained no discoverable material. We have done so and conclude that there was no abuse of discretion.

### *FACTS AND PROCEDURAL HISTORY*

Steven and Sigourney Moe were at home with their two children, aged two and four, at 9:00 p.m. on December 19, 2012. Someone knocked on the door. Steven, who was expecting a friend, opened it. Defendants and a third man entered, each holding a handgun and pointing it at Steven. The men ordered Steven to lie on the floor. He did so. Sigourney, in the next room, saw what was happening and got down on the floor with the children. At one point, Steven said something about the children and a robber told

---

[1] *Pitchess v. Superior Court* (1974) 11 Cal.3d 531.

him to shut up or they would shoot him. Sigourney also made a statement referring to the children, and a robber said, "'We don't give an F about your kids.'"

The robbers were in the house for 10 or 15 minutes. They took some property and left, saying, "'Stay down until you hear us gone.'" Missing after they left were a purple Nikon camera, a white iPhone, a red HTC cell phone, some video game consoles, Sigourney's purse, a wallet, and a small safe. The wallet and safe had about $200 cash in them. The cash in the safe included a five dollar bill that was to be given to the Moes's son as a gift and had "Happy Birthday," followed by the son's name, written on it. The safe also contained a title certificate for Steven's car.

Having no phones, the Moes went to Steven's parents' house and called the police. Deputy Sheriff George Alwaw responded, took statements from the victims, and processed the scene. Around 10:00 p.m. that night, Alwaw was on patrol in the same area and saw defendants, who met the descriptions given by Steven, walking in the parking lot of an apartment complex located immediately behind the Moes's house. Deputy Andrew Piuser arrived and assisted Deputy Alwaw. Defendants consented to be searched. Hayes had a white iPhone. Brown had a wallet containing Sigourney's Social Security card and driver's license along with $170 cash. The cash included the five dollar bill with the birthday message written on it.

Hayes told Alwaw he had come from the home of Britney Belton, which was an apartment in the complex. Alwaw and Piuser went there and searched the apartment with Belton's consent. They found a purple Nikon camera and a BB gun that looked like a real handgun. Belton said these items belonged to Brown. The deputies also found a small black safe inside a suitcase.

A deputy brought Steven to the apartment complex that night. Defendants were shown to Steven and he identified them as two of the robbers. Steven also identified the recovered items as property that had been taken from his house. The safe was locked. Steven told the deputies one key for the safe had been stolen by the robbers, but he had

3.

another key, which the deputies used to open the safe. Inside was a handgun that did not belong to Steven.

The district attorney filed an information against both defendants. Counts 1 through 5 charged Hayes as follows: (1) residential robbery (Pen. Code,[2] § 212.5, subd. (a)) of Steven; (2) residential robbery of Sigourney; (3) a criminal threat (§ 422) against Steven; (4) a criminal threat against Sigourney; and (5) being a felon in possession of a firearm (§ 29800, subd. (a)(1)). Counts 6 through 9 charged Brown: (6) residential robbery of Steven; (7) residential robbery of Sigourney; (8) a criminal threat against Steven; and (9) a criminal threat against Sigourney.

In each of counts 1 through 5, the information alleged sentence enhancements for Hayes based on firearm use (§ 12022.5, subd. (a)), three prior strikes (§§ 667, subds. (c)-(j), 1170.12, subds. (a)-(e)), and two prior prison terms (§ 667.5, subd. (b)). Counts 1 and 2 also alleged a separate firearm enhancement under section 12022.53, subdivision (b), and three prior serious felony convictions (§ 667, subd. (a)). Counts 6 through 9 alleged that Brown personally used a firearm (§ 12022.5, subd. (a)) and had a prior strike conviction (§§ 667, subds. (c)-(j), 1170.12, subds. (a)-(e)). Counts 6 and 7 further alleged a separate firearm enhancement under section 12022.53, subdivision (b), and a prior serious felony conviction (§ 667, subd. (a)). During trial, the court granted a defense motion for judgment on count 5.

The jury found Hayes guilty on counts 1 through 3 and found the firearm-enhancement allegations true on those counts. It could not reach a verdict on count 4, as to which the court declared a mistrial. The jury found Brown guilty on counts 6 through 8 and found true the associated firearm-enhancement allegations. It could not reach a verdict on count 9 and the court declared a mistrial on that count. Thus, Hayes and Brown were each convicted of robbing Steven and Sigourney and of threatening Steven.

---

[2]Subsequent statutory references are to the Penal Code unless otherwise noted.

4.

The court found all the prior-conviction and prior-prison-term allegations true on the offenses of conviction, except that it found one of the prior-prison-term allegations not true for Hayes for each count.

The court granted Hayes's section 1385 motion to strike two of the three prior-strike allegations on counts 1 through 3. The parties stipulated to strike the prior-strike allegation against Brown on counts 6 through 8 as that alleged prior strike was a juvenile offense.

The court sentenced Hayes to a total of 43 years, calculated as follows: 12 years for count 1, plus enhancements of 10 years under section 12022.53, subdivision (b), and 15 years under section 667, subdivision (a), and for count 2, a consecutive term of two years eight months, plus three years four months, for the section 12022.53, subdivision (b) enhancement. The sentence on count 3 was stayed pursuant to section 654, as were the enhancements on counts 1 and 2 under section 12022.5, subdivision (a).

Brown received a sentence of 24 years 8 months: 6 years on count 6, plus an enhancement of 10 years under section 12022.53, subdivision (b); a consecutive term of 16 months on count 7, plus an enhancement of three years four months under section 12022.53, subdivision (b); and a consecutive term of eight months on count 8, with an enhancement of three years four months under section 12022.5, subdivision (a). The enhancement under section 12022.5, subdivision (a), on count 6 was stayed pursuant to section 654.

## *DISCUSSION*

### I.   *Sufficiency of evidence of criminal threat*

Hayes contends that the evidence was insufficient to support the conviction on count 3, making a criminal threat against Steven. Brown does not specifically address this issue, but states that he joins in all arguments made by Hayes that may benefit him. As will be seen, Hayes and Brown are situated identically with respect to this issue, so

5.

our discussion applies to Brown's conviction on count 8 as well as Hayes's conviction on count 3. The People argue that the insufficiency-of-evidence claim raised by Hayes "is inapplicable to Brown because it specifically addresses the evidence pertaining to Hayes," but we do not agree. The portions of the record that show there was no sufficient evidence to connect Hayes to the threat show the same about Brown. Those portions of the record show a lack of evidence tying any of the three robbers individually to the threat.

When considering a challenge to the sufficiency of the evidence to support a judgment, we review the record in the light most favorable to the judgment and decide whether it contains substantial evidence from which a reasonable finder of fact could make the necessary finding beyond a reasonable doubt. The evidence must be reasonable, credible, and of solid value. We presume every inference in support of the judgment that the finder of fact could reasonably have made. We do not reweigh the evidence or reevaluate witness credibility. We cannot reverse the judgment merely because the evidence could be reconciled with a contrary finding. (*People v. D'Arcy* (2010) 48 Cal.4th 257, 293.)

Subdivision (a) of section 422, the criminal threat statute, provides:

> "Any person who willfully threatens to commit a crime which will result in death or great bodily injury to another person, with the specific intent that the statement, made verbally, in writing, or by means of an electronic communication device, is to be taken as a threat, even if there is no intent of actually carrying it out, which, on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat, and thereby causes that person reasonably to be in sustained fear for his or her own safety or for his or her immediate family's safety, shall be punished by imprisonment in the county jail not to exceed one year, or by imprisonment in the state prison." (The remainder of the statute defines "immediate family" and "electronic communication device.")

6.

Steven gave his testimony about the threat when the prosecutor asked him what the robbers said after ordering him to get on the floor. Steven answered: "Oh, they just told me to stay down. And then my kids started crying, and then I told them 'My kids,' and they just told me to shut up or they'd shoot me." On cross-examination, Hayes's counsel attempted to determine what Hayes said to Steven. Steven said he could not connect individual robbers with specific statements:

"Q. … Did [Hayes] personally say anything to you?

"A. He just told me to stay on the ground.

"Q. That's the only thing he said to you.

"A. As far as—I couldn't tell you whose voice was saying what because I was—there was two—two dudes that come in the house. No, there was three dudes that come in the house but two that were doing all of the force. They were the ones that were talking, but I couldn't tell you who was saying what."

Steven did not say which two robbers were doing the talking.

Sigourney did not mention the threat to Steven during her testimony. When the prosecutor gave her an opportunity to add to her remarks about the robbers' statements, she still did not describe the threat made to Steven:

"Q. Okay. Besides shouting for, demanding electronics, phones and saying 'We don't give a fuck about your kids,' did these men say anything else while they were in the house?

"A. Not that I can recall."

In their brief, the People cite no other evidence about the threat against Steven. They concede there is no evidence showing which of the robbers uttered the threat.

This evidence was insufficient to find either Hayes or Brown guilty of violating section 422 as to Steven as direct perpetrators. A threatening statement was made to Steven. "[T]hey just told me to shut up or they'd shoot me," he testified. But there was

no evidence at all on the basis of which the jury could reasonably determine whether it was Hayes, Brown, or the third robber who said it.

The jury was instructed on principles of aiding and abetting, and the People now argue that there was sufficient evidence as to both Hayes and Brown to find them guilty of violating section 422 as aiders and abettors.

We do not see how the evidence showed this. CALCRIM No. 401, with which the jury was instructed, states that, to prove aiding and abetting, the prosecution must show that the defendant knew of the direct perpetrator's intent to commit the crime; the defendant intended to aid and abet the direct perpetrator in committing it; and the defendant did in fact aid and abet in committing it. The instruction further stated that the defendant must "aid, facilitate, promote, encourage, or instigate" the perpetrator in committing the crime. There is no evidence in the record that Hayes or Brown aided, facilitated, promoted, encouraged, or instigated the threatener—whoever it was—in uttering the threat.

The People argue that the evidence showed Hayes, Brown, and the third man all participated in the *robbery* together and therefore shared a common purpose with one another and thus with the speaker of the threat. Evidence of a common purpose in committing a robbery, however, is not evidence of the knowledge, intent, and action necessary to aid and abet the additional crime of making a criminal threat as defined in section 422. To be guilty as direct aiders and abettors, Hayes and Brown would have to know someone in their group intended to say something like what the threatener said to Steven; would have to intend to help the threatener to do it; and would have to engage in some action that would constitute helping or encouraging the doing of it. Participation in the robbery is not enough to show all this. If it were, a robber would always automatically be guilty of violating section 422 if a coperpetrator uttered a threat during the robbery. The People cite no authority in support of this position, and we do not think

8.

it can be correct. Robbery necessarily involves force or fear, but it need not involve a spoken or written threat, as section 422 requires.**3**

For these reasons, we agree with defendants' argument that the evidence was not sufficient to prove counts 3 and 8. We will reverse the convictions on those counts.

## II. *Pitchess*

Before trial, Brown filed a motion pursuant to *Pitchess v. Superior Court, supra*, 11 Cal.3d 531, and Evidence Code sections 1043 to 1045. The motion requested an order directing the Kern County Sheriff's Department to produce the personnel files of Deputy Alwaw and Deputy Piuser, including citizen complaints, internal affairs complaints, and rap sheets, among other things. More specifically, it sought materials relevant to the deputies' lack of credibility, acts involving moral turpitude, dishonesty, false arrests, unbecoming conduct, neglect of duty, and racial bias or profiling. Brown based his request for these materials on an allegation that Alwaw and Piuser fabricated evidence incriminating him. The allegation was based exclusively on defense counsel's information and belief.

The trial court ordered the county to produce records for in camera review and then conducted a hearing outside the presence of the parties. It found that there was no discoverable material. The parties now agree that we should review the confidential record of this hearing, including the documents produced by the county, and determine whether the trial court acted within its discretion in making this finding.

A court deciding a properly noticed *Pitchess* motion must first determine whether the motion shows good cause for production of any of an officer's confidential personnel records. (*People v. Mooc* (2001) 26 Cal.4th 1216, 1226.) Next, the court must obtain potentially relevant personnel records from their custodian and review them for relevance

---

**3**Acknowledging that the jury was not instructed on the natural and probable consequences doctrine, the People do not argue that the convictions could be upheld on the basis of that doctrine, so we need not rule.

9.

at a hearing in camera.  The court is then to order disclosure to the moving party of any information relevant to the pending litigation.  (*Ibid.*)  We review the trial court's ruling for abuse of discretion.  (*Id.* at p. 1228.)

In this case, an employee of the Kern County Sheriff's Office appeared at the hearing as custodian of records and was questioned by a deputy county counsel.  The custodian testified that he had conducted a search of records on Alwaw and Piuser, looking for "any adverse comments or internal affairs investigations and the personnel files of" the two deputies.  He brought a set of records with him to the hearing and testified that they included all the pertinent documents he found.  The court stated that it had reviewed these records and found that none needed to be disclosed to the defense.

We have reviewed the records that were presented to the trial court.  The court did not abuse its discretion in finding there was no discoverable material.

## ***DISPOSITION***

The convictions and sentences on counts 3 and 8 are reversed.  The judgments are affirmed in all other respects.

_____
Smith, J.

WE CONCUR:


_____
Poochigian, Acting P.J.


_____
Franson, J.

10.